UNITED STATES FIDELITY & GUARANTY COMPANY, APPEL-LEE, V. J. O. CURRY ET AL., APPELLANTS.

FILED APRIL 13, 1934. No. 28872.

A. A. *Rezac* and *Lovely & Lovely*, for appellants.

*Gaines, McGilton, McLaughlin & Gaines, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and CARTER and CHAPPELL, District Judges.

CHAPPELL, District Judge.

The United States Fidelity & Guaranty Company, a corporation, appellee herein, executed a bond for Donohue Brothers Company, Incorporated, Omaha, Nebraska, running to and in favor of the Union Stock Yards Company of Omaha, Nebraska, conditioned that Donohue Brothers Company, Incorporated, would pay certain charges to be advanced by the Union Stock Yards Company in connection with their business. This bond was executed April 30, 1931, and was a continuing liability so long as the bond was in existence and not canceled by the United States Fidelity & Guaranty Company.

The bond provided "that, if the company shall so elect, this bond or renewal thereof may be terminated at any time * * * after one month's previous notice to the assured of such election, and * * * the company shall refund the premium paid less a *pro rata* part thereof for the time said liability shall have been in force. * * * That the agent hereby agrees to indemnify the company against any loss or damage it may sustain in consequence of such guarantee."

Defendant J. O. Curry, president of Donohue Brothers Company, Incorporated, executed an indemnity agreement on May 7, 1931, to protect appellee on the original bond. Defendant A. H. Frantz, who was a banker at Friend, Nebraska, and whose son was treasurer of Donohue Brothers Company, Incorporated, executed a like indemnity agreement on May 14, 1931. Donohue Brothers Company, Incorporated, failed to pay certain charges of November 15 to 18, 1931, to the Union Stock Yards Company, which charges were covered by the original bond, and the Union Stock Yards Company made claim against the appellee, United States Fidelity & Guaranty Company, and filed formal proof of such claim with the company. The United States Fidelity & Guaranty Company sent a notice by

registered mail to the indemnitors advising them of the claim, calling upon them to make payment thereof, and stated that, if they did not pay the claim within 10 days, the surety would · pay it and thereafter look to the indemnitors for reimbursement, including all sums paid in satisfaction of the claim and any and all costs, damages and expenses incurred by the surety, including court costs and attorney fees. The indemnitors did not pay the claim. It was paid by the appellee to the Union Stock Yards Company, and receipt and release of the claim were executed by them.

Suit was then instituted against the indemnitors on their indemnity agreements. At the conclusion of the trial the court directed a verdict for. the plaintiff. Defendants appeal.

Although other matters are raised in appellants' brief, we believe that they were properly disposed of by the trial court, and we conclude that the only question for our determination is whether there was any evidence to go to the jury upon the question of whether or not there was a consideration for the contracts of indemnity.

Appellants admit the execution of the original bond and the indemnity agreements, but contend that, because the evidence discloses that they did not receive the one dollar set forth in the indemnity agreements as part consideration therefor, and because the indemnity agreements were made after the original bond was executed, there was no consideration for the making thereof. We believe that these contentions are without merit and that the court properly directed a verdict.

The indemnity agreements, in so far as they are material to this case, both being identical in form, read as follows: "Whereas, the United States Fidelity & Guaranty Company, of Baltimore, Maryland, at the special instance and request of the undersigned indemnitor or indemnitors, became or is about to become surety on a certain bond * * * it is expressly understood and agreed that the obligation of suretyship assumed by said United

States Fidelity & Guaranty Company on behalf of said principal or principals above mentioned, both prior and subsequent to the execution of this instrument, including suretyship assumed by continuation or renewal of the original obligation of suretyship, is assumed at the special instance and request of said indemnitor or indemnitors, who especially warrant the making of such request and that his or their interest in the principal or principals and the giving of said bond is sufficient to and does constitute a valid consideration for the execution of this bond of indemnity. * * * In consideration of the premises and the sum of one dollar in hand duly paid to the indemnitor or indemnitors, the receipt whereof is hereby acknowledged, and for other good and valuable considerations, the said indemnitor or indemnitors hereby covenant and agree * * * to save harmless and keep indemnified the United States Fidelity & Guaranty Company, its successors and assigns, against any and all claims, suits, debts, costs, charges and expenses, including court costs and counsel fees at law or in equity, and against all liability, losses and damages of any nature whatsoever, which the United States Fidelity & Guaranty Company, its successors or assigns may sustain or be put to by reason of the execution by the United States Fidelity & Guaranty Company of said bond or any continuation or renewal thereof, on behalf of the said Donohue Brothers Company, Inc."

It will be noted that, at the time the original bond was executed, it provided that the agent agreed to indemnify the company against any loss or damage it may sustain in consequence of the bond; that the company had a right to terminate the bond at any time it so desired; that the provisions of the indemnity agreement make clear that the indemnitors contracted to indemnify the surety on the original bond for loss sustained by the surety in connection with the original bond whether the same was executed prior to the date of the indemnity agreement or

subsequent to the date thereof, and that the indemnity agreement further indemnified the surety for loss which might be sustained on account of the continuation of the original bond.

There are two kinds of consideration,—that which confers a benefit upon the promisor and that which causes a detriment to the promisee. Either is a valid consideration which will support a contract. *Homan v. Steele, Johnson & Co.*, 18 Neb. 652; *Faulkner v. Gilbert*, 57 Neb. 544; *Henry v. Dussell*, 71 Neb. 691; *Mack v. Mack*, 87 Neb. 819; *Southern Realty Co. v. Hannon*, 89 Neb. 802; *In re Estate of Griswold*, 113 Neb. 256; 13 C. J. 311; 6 R. C. L. 654, 658, secs. 67, 69.

In 31 C. J. 422, we find the following statement: "As a general rule, whatever would be sufficient as a consideration for any other kind of contract is sufficient on which to base a contract of indemnity. The consideration may consist of a benefit to the indemnitor, or of some detriment or injury to the indemnitee. A promise by the indemnitee to forego steps for his own protection or to exercise a forbearance which may be of benefit to the indemnitor may constitute a sufficient consideration." See, also, 31 C. J. 424, which is authority for the proposition that the incurring of indemnity liability is not void for past consideration where the consideration is of a continuing nature. In *Essig v. Turner*, 60 Wash. 175, the court said: "The appellants next insist that the obligation in suit is void for want of consideration. This contention is founded on the fact that it was executed some two weeks later than the original bond, the argument being that for the one obligation to constitute a consideration for the other they must have been executed contemporaneously. But while it is true that ordinarily a past consideration will not support a present promise, this obligation is not of that sort. Here, by the recital of the obligation itself, it is shown that it was executed as much to induce the bailors to continue as bail for their

principal as it was to induce its original execution. Since the bailors had the right to surrender the principal at any time and relieve themselves of their obligation, the indemnity bond had a present consideration as well as a past consideration, the former being of sufficient import to support its validity." Likewise, in *Carroll v. Nixon,* 4 Watts & Serg. (Pa.) 517, we find that eight days after execution of an administrator's bond the defendant wrote to the surety on the bond agreeing to indemnify him against loss in the consequence of his having become surety. The court held that the liability of the surety to be injured in the future was a continuing liability and that the consideration was a continuing consideration and sufficient to sustain the contract of indemnity. See, also, *Esch v. White,* 76 Minn. 220; Id., 82 Minn. 462; *Gamble v. Cuneo,* 162 N. Y. 634; *Carman v. Noble,* 9 Pa. St. 366; Addison, Law of Contracts (11th ed.) 1082.

Clearly, the appellee, United States Fidelity & Guaranty Company, as surety, suffered a detriment by continuing to remain as surety on the original bond after the date of the indemnity agreements. It is this continuing liability after the execution of the indemnity agreements that constitutes a consideration for them. The mere fact that the evidence discloses that the indemnitors did not receive the one dollar recited in the indemnity agreement as part consideration therefor will not take the case to the jury on the question of whether or not there was a consideration for the execution of such agreements. The consideration of a contract need not move to the promisor. A disadvantage to the promisee is sufficient, although the promisor derives no benefit therefrom. *Faulkner v. Gilbert,* 57 Neb. 544.

The judgment of the district court is

AFFIRMED.