JOHN W. NESLUND, APPELLANT, V. J. F. KINNAN, APPELLEE.

FILED JUNE 14, 1935. No. 29289.

*D. E. Harper* and *R. E. Bannister,* for appellant.

*Frank M. Johnson, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

GOSS, C. J.

Plaintiff sued defendant on a demand note for $250. The defense was that it was an accommodation note for the benefit of plaintiff. At the conclusion of defendant's evidence and at the conclusion of all the evidence, plaintiff's motions for a directed verdict in his favor were overruled. The verdict and judgment were for the defendant. Plaintiff appeals.

The question may be decided by an inquiry as to whether there was sufficient evidence to submit as disputed evidence of fact to the jury. All conventional assignments of error are duly made by appellant.

The defendant's son was engaged in the automobile business as Cozad Auto Company, and had creditors to the amount of about $20,000. He owed his father $6,265 and gave him a chattel mortgage on his garage property for that sum, which was recorded May 13, 1930. Soon thereafter the son's garage property was sold on execution, and defendant bought it to protect his chattel mortgage inter-

est. He conveyed the property to Louis Pollat by bill of sale recorded September 5, 1930, showing a consideration of $2,616.60. He employed T. M. Hewitt, a Lexington lawyer, to represent him in the execution sale and the subsequent sale to Pollat.

September 12, 1930, involuntary proceedings in bankruptcy were commenced in the North Platte division by creditors having claims against Cozad Auto Company. This was within four months of defendant's preference as a creditor, and, if successful, would have avoided the preference. Defendant employed Mr. Hewitt to save his property. Hewitt advised him that it could be done if the petitioning creditors could be induced to withdraw their petition. Pursuant to defendant's instructions, Hewitt went to North Platte to see the attorneys for the petitioning creditors and obtained a tentative agreement to settle for 25 cents on the dollar, which he reported to his client. Defendant had no money. After considerable negotiation with plaintiff, the latter was induced to furnish the money. Defendant owed plaintiff about $400 for services as his family physician, and plaintiff advanced the $250 on the promise of Hewitt that his fees as attorney should be postponed to the repayment of the sum advanced by the plaintiff. Hewitt took the money from plaintiff and made the settlement. Plaintiff testified that he had no interest in the bankruptcy matters, and Hewitt, who assisted defendant in negotiating the loan, testified that he knew of no interest of plaintiff in the bankruptcy matters. The evidence shows no such interest except that, if the defendant could be saved repayment of what he had secured by his preference, the plaintiff stood a better chance to be paid what the defendant owed him for services as his family physician. It shows that he advanced the money only after weeks of negotiation and after the failure of defendant to secure it at the bank, or elsewhere. The note was executed the day after plaintiff, by direction of defendant, paid the money to Hewitt to effect the settlement of the bankruptcy. The bankruptcy case was settled for the $250 furnished by

plaintiff direct to Hewitt, instead of being first paid to defendant, all at the request of defendant. If the matter had not been settled, and Cozad Auto Company had been declared bankrupt, defendant would have had to return his money preferentially received and probably would have received only about 10 cents on the dollar.

The only evidence that the note was an accommodation note is that of defendant, who, at the time of the trial, was in his 79th year. The testimony indicates that his mind does not function normally at times and his memory is not good. He testified that plaintiff asked him to sign the note and plaintiff would get the money at the bank, and defendant would never have to pay the note. "He said Bill Kinnan had some book accounts and had some notes and had some judgments, and he would see that that was applied on his note." But, when asked what plaintiff was going to do with the money, he testified: "He was going to pay off the North Platte affair, the bankruptcy affair. That is what he was going to do with that money. Q. Were you interested in that? A. No, sir." He admits that his attorney, Hewitt, and plaintiff advised him that, if the bankruptcy proceeded to a successful conclusion, his preference would be voided. The witness seemed to be forgetful and incoherent, but he stuck to the proposition that he had no interest in the bankruptcy settlement.

Plaintiff testified that, when the note was made, defendant promised to pay it as soon as his share of alfalfa on his farm was sold. Later, when he did not pay, plaintiff asked C. P. Hord, president and manager of Cozad State Bank, to try to collect the note. Defendant called at the bank, and he and Hord had a conversation about the note. Defendant said he had paid the plaintiff lots of money as a physician and was hard up for funds at present. He did not repudiate the debt and did not mention any agreement that he was not to pay the note or that it was to be paid by other accounts and judgments. The title to the note had never passed out of plaintiff. It had never been indorsed.

It is elementary that the burden is upon the defendant to prove that a note made by him is an accommodation note.

"Where the evidence on the trial in the district court is not conflicting, and reasonable minds cannot differ as to the conclusion to be derived therefrom, it is the duty of the court, when requested, to direct a verdict in accordance with such conclusion." *Nebraska Transfer Co. v. Chicago, B. & Q. R. Co.,* 90 Neb. 488; *Swanbach v. Sovereign Camp, W. O. W.,* 103 Neb. 34.

We do not think the testimony of defendant was sufficient to require the issue of fact to be submitted to the jury. A survey of all the evidence indicates that it raises no doubt in the minds of reasonable men that the defendant borrowed the money for his own purpose, that it was used for the furtherance of his own interests, and that he has failed to sustain the burden of proof that he was an accommodation maker. The cause ought not to have been submitted to the jury in opposition to the motions of the plaintiff. The verdict was the result of a misunderstanding of the evidence by the jury. To approve it would result in manifest injustice. The court should have sustained the motion of plaintiff for a directed verdict.

The judgment of the district court is reversed, with directions to enter judgment for plaintiff on the note sued upon and duly proved on the trial.

REVERSED.