YANKTON PRODUCTION CREDIT ASSOCIATION, A CORPORATION, APPELLEE, V. CHRIS LARSEN ET AL., APPELLANTS.

365 N.W.2d 430

Filed April 5, 1985.   No. 83-734.

Patrick J. Birmingham of Birmingham & Scholer, for appellants.

Robert E. Otte of Jewell, Otte, Gatz & Collins, and Steven M. Johnson of Brady, Kabeiseman, Reade, Abbott & Johnson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

The defendants, Chris and Ardith Larsen, husband and wife, appeal from the order of the trial court sustaining the motion of the plaintiff, Yankton Production Credit Association (PCA), for a summary judgment on the defendants' counterclaim for breach of contract.

The PCA initiated the litigation by filing a replevin action against the Larsens, claiming that the defendants had defaulted in payments due to the plaintiff and that the defendants owed the PCA the principal sum of $522,290.95, together with interest. The parties stipulated that judgment be entered in favor of the PCA and that the Larsens reserved their right to file counterclaims.

The amended counterclaim later filed by the defendants alleged that the plaintiff refused to advance them the balance of three separate loans agreed to by the parties and that the plaintiff breached its duty to deal in good faith. The counterclaim also alleged that the PCA expressly and impliedly

represented to the Larsens that it would provide the Larsens a continuing line of credit to finance an expansion of their operation, livestock inventory, and operating expenses.

The plaintiff filed an answer expressly denying that there was an agreement to advance to the defendants any particular sum of money and alleging that any advancement was at the option of the plaintiff. The plaintiff moved for summary judgment and offered depositions of the defendants in support of the motion. The district court ruled in favor of the plaintiff and found that there was no contractual obligation on behalf of the PCA to loan any specific amount of money to the defendants and that any advances were at the sole discretion of the PCA.

In their appeal the defendants allege three assignments of error. The first two assignments may be combined in that they generally allege that the trial court erred in interpreting the note, security agreement, and loan application to mean that the PCA was entitled to advance to the Larsens unreimbursed commitments at its sole discretion. The third assignment of error alleges that the trial court erred in finding that there existed no genuine issue of material fact and that the PCA was entitled to a summary judgment. We reverse and remand for the reasons hereinafter set forth.

The Larsens own and operate a large farm in Knox County, Nebraska. To facilitate an expansion of their livestock breeding operation, they commenced borrowing money from the PCA on April 7, 1978, and proceeded to finance their entire farming and ranching operation through the PCA. At that time they requested $821,982.37 and executed a loan application, security agreement, and promissory note. The loan agreement in each of the loan applications that the Larsens signed contained the following provisions:

> *To accept advances of loan proceeds to be made at the option of the Association* and to pay interest (which may be variable) on such advances at a rate(s) provided in promissory note(s) to be executed by the undersigned in a form requestd [sic] by the Association from the date of the advance(s) until paid.

> That the Association may disburse from the proceeds of the loan the amount required to (1) purchase Class B

stock; (2) pay the cost and expense incident to the making of the loan; (3) pay all prior liens on the property offered as a security; (4) pay such other obligations as are listed in schedule "Purpose of Loan" in this application; (5) *and to disburse any and all other proceeds to the undersigned in the Bank of Verdigre . . . Acct. #277-088.*

(Emphasis supplied.) The security agreements that the Larsens signed contained the following provision:

It is understood and agreed between the parties hereto that nothing herein contained *shall be construed to obligate the Secured Party to make loans or advances to the Debtor and that the sole purpose of this instrument is to provide collateral security for presently existing indebtedness and loans and advances which in the absolute discretion of the Secured Party, may be made concurrently or hereafter to the Debtor.*

(Emphasis supplied.) The promissory notes did not contain any language purporting to limit the obligation of the PCA to advance funds at its option.

The initial request for $821,982.37 was approved and the money was released by the PCA as the Larsens needed it. Initially, this arrangement was satisfactory to the Larsens. On January 10, 1980, the Larsens executed and delivered to the PCA a promissory note in the sum of $737,000, of which $570,000 was for the purpose of purchasing livestock and approximately $167,000 was for operating expenses. From January 10, 1980, until the end of April 1980, the PCA provided the Larsens with $251,382 of the $570,000 earmarked for purchasing livestock. The PCA thereafter refused to loan the Larsens the remainder of the previously committed $570,000 for livestock inventory. This amounted to approximately $318,618. Consequently, the defendants could not buy the livestock needed to fully utilize their expanded operation and generate the necessary profits to make the payments on their debt. On January 6, 1981, the PCA agreed to loan the Larsens $362,825. The Larsens executed a promissory note and received $154,975 of the total loan amount. The PCA refused to advance the remaining amount of $207,850 to the Larsens. Finally, on May 29, 1981, the PCA agreed to loan

$10,000 to the Larsens. Later, they refused to advance the Larsens $5,527 of this agreed-upon amount. The Larsens claim that the failure of the PCA to loan them the remainder of the agreed-upon loan amounts cost them $650,000 in lost profits.

A summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, that the ultimate inferences to be drawn from those facts are clear, and that the moving party is entitled to a judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1979); *Witherspoon v. Sides Constr. Co., ante* p. 117, 362 N.W.2d 35 (1985); *Cummings v. Curtiss, ante* p. 106, 361 N.W.2d 508 (1985); *Gilbreath v. Ridgeway*, 218 Neb. 822, 360 N.W.2d 474 (1984); *Stromsburg Bank v. Nuttelman*, 218 Neb. 687, 358 N.W.2d 746 (1984); *Mutual Benefit Life Ins. Co. v. Chisholm*, 213 Neb. 301, 329 N.W.2d 103 (1983).

Upon a motion for summary judgment the court examines the evidence to discover if any real issue of fact exists. We are required, as was the trial court, to take the view of the evidence most favorable to the party against whom the motion is directed and give that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. *Piper v. Hill*, 185 Neb. 568, 177 N.W.2d 509 (1970); *Bank of Valley v. Shunk*, 208 Neb. 200, 302 N.W.2d 711 (1981); *McHenry v. First Nat. Bank*, 216 Neb. 580, 344 N.W.2d 652 (1984); *Strong v. K & K Investments*, 216 Neb. 370, 343 N.W.2d 912 (1984); *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984). Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. *Bank of Valley, supra*.

Upon our review of the record and in light of the above standard, we find at least two genuine issues of material fact in the defendants' counterclaim. First, there is a factual issue as to whether the PCA made a promise to the Larsens to finance the expansion of their livestock feeding operation with its increased working capital requirements and, if this promise was made, whether the Larsens relied on it to their detriment. From the facts available to us it appears that there may be an issue of promissory estoppel. Promissory estoppel is explained in

Restatement (Second) of Contracts § 90 at 242 (1981), as follows:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

In *Leach v. Treber*, 164 Neb. 419, 82 N.W.2d 544 (1957), we adopted the first Restatement of Contracts § 90 (1932), and stated: " 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " 164 Neb. at 423, 82 N.W.2d at 547; *May v. City of Kearney*, 145 Neb. 475, 17 N.W.2d 448 (1945); *Kucera v. Kavan*, 165 Neb. 131, 84 N.W.2d 207 (1957); *Pike v. Triska*, 165 Neb. 104, 84 N.W.2d 311 (1957); *Schrempp v. Gallup*, 210 Neb. 415, 315 N.W.2d 248 (1982).

In *Scottsbluff Nat. Bank v. Blue J Feeds, Inc.*, 156 Neb. 65, 77, 54 N.W.2d 392, 400 (1952), we held that "in order for a detriment to the promisee to constitute a valid consideration for a note or contract, it must have been within the express or implied contemplation of the parties and known to and agreed to by them." See, *Leach v. Treber, supra; Schrempp v. Gallup, supra*.

Taking the view of the evidence most favorable to the defendants, the parties against whom the motion was directed, the record reveals that the Larsens relied to their detriment on the representations of the PCA. The Larsens approached the PCA about financing their expansion. The PCA expressly agreed to finance this expansion and to provide the Larsens with a continuing commitment for a line of credit to service the intended expansion-oriented operation, to include financing for livestock inventory. The Larsens subsequently made capital improvements to expand their livestock feeding operation and their feed storage facilities. This reliance by the Larsens on the PCA's representation was reasonable and foreseeable. By

financing the Larsens' expansion and then cutting off the funds necessary to buy livestock to utilize the expanded facility, the PCA contributed to the financial difficulties that the Larsens later encountered. Consequently, taking this view of the evidence, the promise of the PCA to finance the Larsens' operation and provide a continuing line of credit should be enforced to avoid injustice to the Larsens.

Secondly, there may be a genuine issue of material fact as to whether the PCA acted in good faith when it refused to loan the Larsens the amount of their budget loan. Neb. U.C.C. § 1-203 (Reissue 1980) provides: "Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement." The PCA refused to advance to the Larsens the balance of the loan dated January 10, 1980.

The PCA now takes the position that the loan agreement gives them the absolute right to refuse further advances of the budget loan. However, Dennis Miller, the vice president of the Yankton PCA, testified by deposition that he alone did not have the authority to refuse to advance the sum of money in the budget loan. He further stated that the PCA had the obligation to advance funds as directed by the budget loan based on loan performance. The loan committee had the authority to determine loan performance and, based on that determination, could refuse to advance funds in a budget loan. Consequently, the PCA, in accordance with its procedures, does not operate as though it had an absolute right to refuse to advance funds in a budget loan. The PCA's normal operating procedures are inconsistent with the position that the PCA is taking in this litigation.

The record does not reveal whether the PCA's refusal to the Larsens was based on a reasonable, good faith business judgment. If the PCA's decision to cut off funds from the defendants was not based on a good faith business judgment, the plaintiff would be liable to the defendants for damages caused as a result of that action.

In view of the evidence there exists a substantial and genuine issue of material fact as to whether the defendants' detrimental reliance was within the express or implied contemplation of the parties and agreed to by them and whether the plaintiff acted in

good faith in refusing to advance to the defendants the balance of the loan.

" 'A summary judgment is authorized only when the moving party is entitled to a judgment as a matter of law. If there is a genuine issue of fact to be determined, a summary judgment may not be properly entered.' " *Wolf v. Tastee Freez Corp.*, 172 Neb. 430, 437, 109 N.W.2d 733, 738 (1961). See, also, *Fay Smith & Associates, Inc. v. Consumers P.P. Dist.*, 172 Neb. 681, 111 N.W.2d 451 (1961); *Hansen v. Hill*, 215 Neb. 573, 340 N.W.2d 8 (1983). The motion by the PCA for summary judgment should have been overruled.

The judgment of the lower court in favor of the plaintiff, dismissing the counterclaim of the defendants, is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.