PRODUCTION CREDIT ASSOCIATION, Plaintiff and Appellee,

v.

Donald G. HALVERSON and Lorna G. Halverson, Defendants and Appellants.

Civ. No. 11087.

Supreme Court of North Dakota.

May 13, 1986.

Pearson & Christensen, Grand Forks, for plaintiff and appellee; argued by Douglas A. Christensen.

Kirschner & Baker Legal Clinic, Fargo, for defendants and appellants; argued by Michael J. Garrison.

LEVINE, Justice.

Donald G. and Lorna G. Halverson (hereinafter collectively referred to as Halverson) appeal from a district court summary judgment entered in an action brought by Production Credit Association of Grafton (PCA). We reverse and remand for trial.

Asserting that Halverson was in default under the terms of a 1980 "Basic Loan Agreement" and a 1984 "Supplementary Loan Agreement," PCA sued for a money judgment and an order allowing it to repossess and dispose of farm machinery and equipment in which it asserted a security interest, with an accounting to Halverson of any surplus or an order establishing a deficiency in favor of PCA.

PCA filed an "ex parte motion for an order to show cause re claim and delivery,"

a "replevin bond and written undertaking," and an affidavit of Harold Becker, a PCA officer. By order of March 20, 1985, the trial court ordered Halverson to show cause on April 9, 1985, "why the Defendants should not be required to assemble the secured collateral and make it available to Plaintiff/secured party, or permit Plaintiff/secured party to repossess said collateral wherever it may be found." The motion, replevin bond and undertaking, affidavit, and order to show cause were served on Halverson on April 3, 1985.

Halverson answered the complaint and filed documents opposing the motion for an order to show cause, Becker's affidavit, and the replevin bond and written undertaking. After the April 9 hearing, the trial court issued an order granting PCA's claim and delivery application and allowing it to repossess and sell the property in which it claimed a security interest.

PCA filed a motion for summary judgment supported by the previously filed Becker affidavit and later supplemented with an affidavit of Keith Rourke. Halverson filed an affidavit in opposition to the motion. After a hearing on June 5, at which Halverson appeared pro se,[1] an order for summary judgment was entered on June 17, granting PCA a money judgment and authorizing it to sell the collateral in which it had a security interest, and further providing:

> "IT IS FURTHER ORDERED in view of the Defndants [sic] having contacted an attorney ... the Court will allow the Defendants fifteen (15) days from June 15th, 1985 for Attorney Kischner [sic] to make written application for the vacation of this Order for Judgment. If said written application is made the Court will schedule another hearing to determine if there are reasons why the Production Credit Association is not entitled to a summary judgment...."

---

1. · Halverson's counsel, who was unable to attend the hearing, had unsuccessfully requested a continuance from counsel for PCA (without, however, requesting a continuance from the trial court).

Within the time provided in the order for summary judgment, Michael Garrison, an attorney for Halverson, filed a motion (with a request for a hearing) to vacate the order for summary judgment, a motion to amend Halverson's answer and set up a counter-claim, Halverson's affidavit in support of the motion to vacate, and a demand for jury trial. Briefs on the motions were filed by both parties and considered by the trial court. By order of July 31, 1985, the trial court denied all of Halverson's motions.

Counsel for Halverson filed a motion for a hearing on PCA's motion for summary judgment, Halverson's motion to vacate the order for summary judgment, and Halverson's motion to amend. The trial court issued an order which affirmed the previous order for summary judgment and also ordered dismissal of PCA's action because PCA had repossessed and sold the Halverson collateral, the proceeds from which satisfied PCA's claim. A judgment of dismissal was entered and Halverson appealed.

Halverson contends that the trial court erred: (1) in granting PCA's motion for summary judgment; (2) in denying Halverson's motion to amend his answer and his demand for jury trial; and (3) in granting PCA possession of Halverson's machinery and equipment under the claim and delivery statute.

### I.

Whether this action was properly disposed of by summary judgment depends upon a showing of "no genuine issue as to any material fact" and "that any party is entitled to a judgment as a matter of law." Rule 56(c), N.D.R.Civ.P.

"A motion for summary judgment may be granted only if, after considering the evidence and inferences in the light most favorable to the party against whom the judgment is demanded there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *St. Paul Fire & Marine Insurance Co. v. Amerada Hess Corpo-*

*ration,* 275 N.W.2d 304 (N.D.1979); *Albers v. NoDak Racing Club, Inc.,* 256 N.W.2d 355 (N.D.1977)." *Latendresse v. Latendresse,* 294 N.W.2d 742, 748 (N.D. 1980).

Under the terms of the June 17 order for summary judgment, the trial court would, upon application, "determine if there are reasons why the Production Credit Association is not entitled to a summary judgment." The only burden upon Halverson to preclude summary judgment was to raise a genuine issue of material fact. We believe Halverson did that.

In his June 18, 1985 affidavit in support of his motion to vacate the order for summary judgment, Halverson stated: (1) that he had been doing business with PCA since approximately 1972; (2) that in March 1980 he borrowed funds from PCA pursuant to a basic loan agreement and a supplementary loan agreement which, like subsequent supplementary loan agreements executed in early 1981 and 1982, required yearly payment of all accrued interest and 15 percent of the principal balance existing at the effective date of the supplementary loan agreement; (3) that in November 1982 he informed Harold Becker, a PCA officer, that he had funds to pay on the loan but would need in excess of $50,000 of those funds in March 1983 for a payment due Federal Land Bank; (4) that Becker represented that if Halverson used that money to reduce the PCA loan balance, PCA would advance funds for the payment to Federal Land Bank under the terms of the prior agreements requiring repayment of only 15 percent of the principal per year; (5) that Becker advised him to reduce the PCA balance to five or ten dollars but not to repay the loan in full, so that the previous agreements relating to 15 percent principal payments would apply; (6) that, in reliance on Becker's representations, Halverson reduced his PCA loan balance to five dollars by prepaying in excess of $100,-000; (7) that PCA did advance the funds for the payment to Federal Land Bank; (8)

that thereafter PCA would not honor the previous agreements providing for 15 percent principal payment each year but required Halverson to execute supplementary loan agreements in 1983 and 1984 that required repayment of 100 percent of principal each year, which Halverson had no choice but to execute because he had paid Federal Land Bank with the funds advanced by PCA; (9) that he detrimentally relied on PCA's representations with no knowledge of the true facts relating to terms and conditions of future loans; (10) that PCA has not acted in good faith; and (11) that PCA's breach of the earlier agreement, its misrepresentations, Halverson's detrimental reliance thereon, PCA's changes in the terms of the 1983 and 1984 loans, and increasing the repayment of loan principal from 15 percent per year to 100 percent per year caused Halverson to have less funds to finance his farming operation and that the combination of less funds and a shorter time within which to repay principal caused his financial difficulties, including his inability to repay the 1984 PCA loan. The matters raised in Halverson's affidavit were also raised in his proposed amended answer and counterclaim.

■ Upon considering Halverson's affidavit in the light most favorable to him, we conclude that genuine issues of material fact do exist precluding disposition of the action by summary judgment. It appears to us that Halverson has raised genuine issues as to material facts with regard to fraud, estoppel, breach of PCA's contractual obligation of good faith, and possibly other matters as well.[2] *See, e.g., Yankton Production Credit Ass'n v. Larsen*, 219

Neb. 610, 365 N.W.2d 430 (1985); *First National Bank in Libby v. Twombly*, 689 P.2d 1226 (Mont.1984); *O'Connell v. Entertainment Enterprises, Inc.*, 317 N.W.2d 385 (N.D.1982); *Verry v. Murphy*, 163 N.W.2d 721 (N.D.1968). Because Halverson raised genuine issues as to material facts precluding summary judgment, we reverse the summary judgment.

## II.

By its order of July 31, 1985, the trial court, in addition to denying Halverson's motion to vacate the previous order for summary judgment, denied Halverson's motion to amend his answer and set up a counterclaim, and his demand for trial by jury. No reasons for the denials were stated in that order. "Denial based only upon the determination that summary judgment was proper would have been erroneous." *First State Bank of Buxton v. Thykeson*, 361 N.W.2d 613, 617 (N.D.1985). Because no other reasons were stated, we vacate the order denying the motion to amend and the demand for trial by jury. "Upon remand, the trial court will have an opportunity to consider the motion [and demand] in light of our holding that summary judgment was not properly granted." *Thykeson, supra*, 361 N.W.2d at 617.

## III.

■ Halverson asserts that the trial court erred in granting PCA prejudgment possession of Halverson's machinery and equipment pursuant to Ch. 32–07 (Claim and Delivery), N.D.C.C., because the "Replevin Bond and Written Undertaking"

---

**2.** In his proposed amended answer, Halverson asserts that he signed supplementary loan agreements in 1983 and 1984 "under circumstances constituting economic duress," which was also addressed in Halverson's affidavit. In his brief to this Court, Halverson relies on *International Underwater Contractors, Inc. v. New England Telephone & Telegraph Co.*, 8 Mass.App.Ct. 340, 393 N.E.2d 968 (1979); *Urban Plumbing & Heating Co. v. United States*, 187 Ct.Cl. 15, 408 F.2d 382 (1969), *cert. denied*, 398 U.S. 958, 90 S.Ct.

2164, 26 L.Ed.2d 542 (1970); and distinguishes *Production Credit Association of Minot v. Geving*, 218 N.W.2d 185 (N.D.1974). We express no views on this matter for, as in *First State Bank of Buxton v. Thykeson*, 361 N.W.2d 613 (N.D. 1985), the facts have not been sufficiently developed to allow a determination on this issue and Halverson will have an opportunity on remand to amplify the record in this regard when the trial court considers the motion to amend in light of our reversal of the summary judgment.

filed by PCA was executed by PCA only and was not executed by any sureties. PCA argues that Halverson waived any objection to the undertaking by failing to object to the sufficiency of PCA as surety within three days after service. Halverson objected to the bond six days after service. The relevant statutes provide in pertinent part as follows:

"*32–07–04. Security by plaintiff.* —Upon the receipt of an affidavit and requisition as provided in section 32–07–03 with a *written undertaking executed by one or more sufficient sureties* approved by the sheriff, to the effect that they are bound in double the value of the property, as stated in such affidavit, for the prosecution of the action for the return of the property to the defendant, if return thereof is adjudged, and for the payment to him of such sum as for any cause may be recovered against the plaintiff, the sheriff forthwith shall take the property...." (Emphasis added.)

"*32–07–05. Exceptions by defendant to sufficiency of sureties or amount of undertaking.*—The defendant, within three days after the service of a copy of the affidavit, requisition, and undertaking, may give notice to the sheriff that he excepts to the sufficiency of the sureties, or the amount of the undertaking. If he fails to do so he shall be deemed to have waived all objection to them...."

The purpose of the undertaking required by § 32–07–04, N.D.C.C., is:

"to protect the defendant in case the property is wrongfully taken from him and not returned, and to protect him if he be damaged by a failure to prosecute the action." *Siebolt v. Konatz Saddlery Co.,* 15 N.D. 87, 106 N.W. 564, 565 (1906).

A surety is one who becomes responsible for the performance of an act by another. Section 22–03–01, N.D.C.C. There are no sureties to an undertaking executed only by the plaintiff.

*Golden Valley County v. Curtin,* 52 N.D. 372, 203 N.W. 189 (1925), involved an attachment undertaking required by § 7543, C.L. 1913, which, in pertinent part, provided as follows:

"*§ 7543. Plaintiff's undertaking. Exceptions thereto.* Before issuing the warrant the clerk must require a written undertaking on the part of the plaintiff with sufficient surety, ... The defendant may at any time within ten days after a levy under a warrant of attachment except to the sufficiency of the surety upon such undertaking. Thereupon the surety must justify ... or a new undertaking must be given with new surety.... If the defendant does not except as prescribed in this section he is deemed to have waived all objection to the surety...."

The plaintiff executed an attachment undertaking with no sureties. The defendants moved to discharge the writ as improvidently issued for lack of a surety. The plaintiff asserted, 203 N.W. at 190, that the defendants' remedy:

"was to except to the surety, in the manner provided by section 7543, C.L. 1913, and that, having failed to except within 10 days on the ground that the surety was insufficient, they lost the right to complain on the ground that no sureties appeared on the bond."

This court said, 203 N.W. at 190:

"This statute clearly contemplates an undertaking with a surety, the sufficiency of which, however, the defendant may challenge. Here we have no undertaking—merely the promise of the plaintiff to pay all damages and costs, in the event of defeat, a duty it probably owes, at least as to the costs, in the instant case without such special agreement. See *Great Northern Exp. Co. v. Gulbro,* 38 N.D. 352, 165 N.W. 513. There must be an undertaking with some surety on it before the defendant loses any right under section 7543, supra. The time within which defendant must move does not begin to run against him until he is confronted with an undertaking executed by

a surety. The defendants have not lost the right to ask that the attachment proceedings be vacated because they did not except within 10 days to a surety that does not and never did exist."

The statutory language in §§ 32–07–04 and 32–07–05, N.D.C.C., and § 7543, C.L. 1913, is similar and the purpose sought to be achieved by them is similar. We discern no reason why claim and delivery undertakings with no sureties should be treated any differently than attachment undertakings with no sureties. Accordingly, we conclude that the trial court erred in granting PCA prejudgment possession of Halverson's machinery and equipment without an undertaking complying with the provisions of § 32–07–04, N.D.C.C.

We direct the trial court, upon remand, to order PCA to file an undertaking "executed by one or more sufficient sureties," as required by § 32–07–04, N.D.C.C. Prejudgment seizure of a defendant's property before there has been a determination of the underlying claim and before the defendant has had an opportunity to be heard on the merits of the underlying claim, is a drastic remedy the granting of which demands the utmost caution and sensitivity. In view of the magnitude of harm that a plaintiff may visit upon a defendant by obtaining prejudgment possession of the defendant's property through claim and delivery proceedings, strict compliance with statutes designed to protect the defendant is required.

For the reasons stated, the summary judgment is reversed and the case is remanded for trial and other proceedings consistent with this opinion.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.