FAY SMITH & ASSOCIATES, INC., A CORPORATION, APPELLANT, v. CONSUMERS PUBLIC POWER DISTRICT, A CORPORATION, APPELLEE.

111 N. W. 2d 451

Filed November 10, 1961. No. 35034.

*Cassem, Tierney, Adams & Henatsch,* for appellant.

*Healey, Wilson & Barlow,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action at law wherein Fay Smith & Associates, Inc., a corporation, is plaintiff and appellant, and Consumers Public Power District, a corporation, is defendant and appellee. The action was commenced in the district court for Lancaster County. After some preliminary proceedings on a petition and an amended petition over a period of more than 2 years, plaintiff filed a second amended petition. Shortly thereafter, defendant filed a motion for summary judgment, with a supporting affidavit. No pleadings had been filed in the case by the defendant other than motions. The deposition of plaintiff's president, which defendant had taken over 2 years previously, was on file. The plaintiff filed no affidavit, and the affidavit filed by the defendant with its motion for summary judgment was restricted to identifying and offering two letters between the parties which were referred to in the deposition.

After argument, the motion for summary judgment was sustained, and the plaintiff's action dismissed. Plaintiff filed a motion for new trial which was overruled, and the plaintiff perfected its appeal to this court.

Plaintiff assigns as error the sustaining of defendant's motion for summary judgment and the overruling of plaintiff's motion for new trial.

The motion for summary judgment was submitted to the trial court on the deposition of the plaintiff's president; the second amended petition with attached exhibits, consisting of an unsigned contract and a letter from plaintiff's president dated May 17, 1954; and two letters, one from plaintiff's president dated May 24, 1954, and the other from defendant's general manager dated June 4, 1954, both of which were supplied by the affidavit of defendant's general manager.

In Wolf v. Tastee Freez Corp., *ante* p. 430, 109 N. W. 2d 733, we said: "In considering a motion for summary judgment the court should view the evidence in the

light most favorable to the party against whom it is directed."

We now review the second amended petition, the deposition, and the letters in the light of the above rule, and state conclusions which we feel could reasonably be drawn to sustain plaintiff's claim.

Plaintiff is a firm of consulting engineers. Plaintiff and defendant were in the process of developing a contract for architectural services in the construction of a steam generating plant between Lincoln and Beatrice when the Custer Public Power District sued to stop the project. A contract satisfactory to both parties had been developed but had not yet been signed. This contract is attached to and made a part of plaintiff's second amended petition. Shortly after the suit was filed by the Custer Public Power District, the plaintiff was approached by representatives of defendant about doing preliminary work pending the litigation, which both parties assumed would be terminated successfully although there would be a delay of several months. In response to these inquiries, the plaintiff offered to start work immediately and tendered the services of plaintiff's three executives for a nominal hourly charge for the services to be rendered by them. Plaintiff alleges, however, this charge was conditional and that if defendant prevailed in the litigation and went ahead with the project, the work done by its executives would then be compensated on the basis set forth in the unsigned contract, allowing credit for the amount paid. The defendant accepted the proposal and plaintiff did the preliminary work for which it was paid $12,854.17. Plaintiff alleges its proposal was made in its letter to the defendant dated May 17, 1954, and amplified in its letter of May 24, 1954; and that the defendant accepted the offer in its letter of June 4, 1954.

The letter of May 17, 1954, to defendant is as follows:

"Enclosed herewith is an outline of recommended procedure in plant design.

"You will note that the design consists of six phases, three of which must be completed before actual equipment specifications can be prepared. Upon completion of the first three phases, decision on major equipment components can be determined and when such determination is made, actual design can be undertaken.

"Due to recent developments in connection with providing additional capacity for your eastern division, we wish to propose the following plan under which a considerable portion of preliminary design work can be completed.

"In the contract which has been developed covering our services in connection with your proposed plant, provision has been made for compensation of employees of our organization, excepting Smith, Mann, and Lyle. We propose to start work immediately on phases 1, 2, 3, and 4 as contained in the enclosed design outline, under identical terms of our contract, providing that compensation for actual time of Smith, Mann, and Lyle in connection with preliminary design phases be paid at the rate of $4.50 per hour plus 50%.

"When present uncertainties in connection with proposed work are removed and if Consumers proceed with proposed construction, the amounts paid to our organization for the services of Smith, Mann, and Lyle would be considered as payments on account of the basic fee in our main contract.

"Would like to discuss this with you in Columbus later this week but will call you for an appointment."

The letter of May 24, 1954, to defendant is as follows:

"This letter will confirm our discussion of May 21 regarding preliminary engineering work in connection with your proposed power plant to be located in the Lincoln-Beatrice area.

"We will proceed at once assembling necessary information which will be required to enable us to make heat balance studies, and when these studies are ap-

proved by your organization, we will be in a position to promptly ask for bids on major equipment items.

"We will also proceed with surveys in connection with the selection of the plant site. This work will cover the assembly of information relating to rail lines, gas lines, water conditions and available sub-surface information and the planning of any sub-surface explorations which might be required when construction is undertaken.

"Mr. Lyle and an assistant will be responsible for the survey for the site, and Mr. Mann will proceed with the preliminary studies in connection with the plant. He will work with Mr. Venable and his assistant in assembling required information as to the prospective loads and load duration curves under which the plant will operate.

"It is expected that within 3 or 4 weeks he will be in a position to proceed with heat balance studies at which time we would employ Mr. John Peterson who worked with him in North Omaha.

"We would bill you for the services of the men for actual time spent on the work at the following rates:

| "Mr. F. E. Smith | $4.50 per hour |
| Mr. Robert Mann | 4.50 per hour |
| Mr. Hayes Lyle | 4.50 per hour |
| Mr. John Peterson | 3.50 per hour |
| Mr. J. H. Smith | 2.50 per hour |

It is not expected that Mr. F. E. Smith will spend much time in connection with your work until his study in connection with Lincoln is completed.

"Mr. John Peterson will not be available until the latter part of June. In fact, the information required for heat balance studies will not be available before that time.

"We would bill you as stated in our proposal of May 17 for hours spent on preliminary studies at the rates stated above plus 50%, and stenographic help as required at cost. We would also expect you to reim-

burse us for meals and lodging for the site survey men when away from Omaha and auto expense at 8 cents per mile.

"We have some small jobs in our office at the present time and estimate that not more than 75% of the time will be spent on your job.

"We estimate that our billings to you would not exceed $10,000 through the month of August.

"Sometime in August progress should reach the point where an additional electrical engineer could be used to advantage and possibly an additional draftsman. However, such additional help would only be employed with your approval.

"We propose to work closely with and under the direction of your organization during this preliminary period and assure you that such work will save valuable time in enabling us to get construction started promptly when present uncertainties are removed."

The letter of June 4, 1954, from defendant to plaintiff is as follows:

"Subject: *Preliminary Engineering Work*

"This letter will confirm discussions with you relative to the firm of Fay E. Smith and Associates proceeding with preliminary engineering work on the proposed power plant for the Consolidated Eastern System, as more fully set out in your letters of May 17 and 24.

"We are hereby instructing you to proceed with preliminary work, with the understanding that the control as to the work you are undertaking will remain with Consumers Public Power District and that the estimated cost for Phases 1, 2, 3 and 4 will be $10,000.00, for which we have Board approval.

"Mr. W. F. Venable, Superintendent of Power Supply, will be the individual in Consumers District's organization with whom you will work on these preliminary studies."

Plaintiff has pleaded an action for services fully performed. Subsequent to the successful termination of

the litigation with the Custer Public Power District, defendant did proceed with the construction of a steam plant. Plaintiff was not retained for the architectural services or as consulting engineers, although its work was used by the defendant. Plaintiff is not seeking to recover for the breach of the unsigned contract. It is seeking to recover for the services actually rendered by its three executives on the basis of the rate stipulated in the unsigned contract, allowing credit for the amount paid on the hourly rate, which it contends was conditional.

The applicable part of the summary judgment statute provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." § 25-1332, R. R. S. 1943.

We said in Healy v. Metropolitan Utilities Dist., 158 Neb. 151, 62 N. W. 2d 543: "It is plain that the movant in order to obtain a summary judgment must show, first, that there is no genuine issue as to any material fact in the case and, second, that he is entitled to a judgment as a matter of law. * * * The second provision is met if movant would be entitled to a directed verdict on the basis of the undisputed facts if the case were being tried to a jury."

The defendant's position may be summed up by the following paragraph from its brief: "Although the letter of May 17, 1954, does not say plaintiff is proposing a contingent fee arrangement, it does say that if Consumers later proceeds with the proposed construction, amounts paid to Smith, Mann and Lyle for the interim work 'would be considered as payments on account of the basic fee in our main contract' (E1:1,1). *However, that letter was not accepted by Consumers,* and plaintiff sent a May 24th letter to Consumers containing new provisions (page 20 of E2:1,1). This letter does not

mention the 'main contract' (E3:2,2). Consumers' later acceptance authorized only $10,000.00 for the interim work, and did not mention any contingent arrangement (E3:2,2). Eventually, plaintiff was paid $12,854.17 for work which it had been estimated by plaintiff would cost $10,000.00—and that is no 'mere pittance' for the assembly of several volumes of data (T11). There was no contingent fee arrangement—and that is clear when the three letters allegedly constituting the contract are read." (Italics supplied.)

Whether defendant did or did not accept the proposal outlined in plaintiff's letter of May 17, 1954, would certainly appear to be a genuine issue as to a material fact. Plaintiff's position is that the letter of May 24 was the result of a conversation held May 21 on the letter of May 17, and that the letter of May 24 is supplementary to the letter of May 17.

The letter of May 24, 1954, refers to a discussion held May 21. It goes into detail as to the type of work to be done. It specifies the individuals who will be responsible for particular phases. It is to be noted that the letter states: "We would bill you as stated in our proposal of May 17 * * *." While the contingent fee arrangement is not specifically mentioned, it certainly is not negatived or excluded, and the language used, liberally construed, lends substance to the plaintiff's claim. The last paragraph of the letter then states: "We propose to work closely with and under the direction of your organization during this preliminary period and assure you that such work will save valuable time in enabling us to get construction started promptly when present uncertainties are removed." This, in connection with the language used, is consistent with plaintiff's construction.

The following from the deposition of plaintiff's president, offered by the defendant, construes the letter of May 24, 1954, as contended by plaintiff: "Q- And the May 24th letter was a proposal for doing the same sort

of work that you had proposed in your May 17th letter, was it not? A- Yes. Q- But I presume the terms under which you were going to do the work were somewhat different in your May 24th letter than they were in your May 17th letter or else you wouldn't have bothered to write another letter, would you? A- I imagine what prompted this May 24th letter was in connection with employees that we would have in addition to members of the firm, which I don't recall whether it was discussed on May 21st or not. There was some question come up as to who we had available for this work and some other matters is what prompted the letter of May 24th. *It is nothing more than the expansion of the proposal of May 17th.*" (Italics supplied.)

Construing the evidence most favorable to the plaintiff for summary judgment purposes, the following from the defendant's letter of June 4, 1954: "This letter will confirm discussions with you relative to the firm of Fay E. Smith and Associates proceeding with preliminary engineering work on the proposed power plant for the Consolidated Eastern System, as more fully set out in your letters of May 17 and 24," would lend further substance to the plaintiff's claim.

Defendant appears to rely on the following questions and answers from the deposition as limiting the pay for the preliminary work to the letters and excluding any reference to the contract: "Q- Now then your petition in this case states that you did submit a supplemental proposal that Consumers had asked for and that Consumers had accepted it, and I wonder if it isn't correct to say that the three letters we have referred to—your letter of May 17, 1954, your letter of May 24, 1954, and Mr. Schacht's letter of June 4, 1954 are the proposal and acceptance you are referring to? A- That is right. Q- There isn't any additional provisions of any proposal or acceptance in this regard any place, is there? A- No. * * * Q- I am not sure that I understand Mr. Smith now. Insofar as the interim work in connection with that sup-

plemental proposal of your's was concerned, is the agreement for that contained in the three letters; the letter of May 17th, 1954 and the letter of May 24, 1954 and the letter of June 4, 1954? A- What is June 4? Q- That is Mr. Schacht's letter to you. A- What did you ask me? (Question read back) A- Yes. Q- *And beyond what is in those three documents, did anybody from Consumers ever say to you orally or in writing that you would be paid for this interim work in accordance with the terms of the contract which was under negotiation? A- No."* (Italics supplied.)

In Miller v. Aitken, 160 Neb. 97, 69 N. W. 2d 290, we stated as follows: "Summary judgment is effective and serves a separate useful purpose only when it can be used to pierce the allegations of the pleadings and show conclusively that the controlling facts are otherwise than as alleged."

The defendant's position is that it has pierced the allegation of plaintiff's pleadings by the admission of plaintiff's president, as set out above, and it is therefore entitled to a summary judgment. Viewing the testimony of the plaintiff's president in the light most favorable to plaintiff, we do not so construe it.

The trouble with defendant's position is that it overlooks the fact that on a motion for summary judgment the plaintiff is entitled to have every inference that can be drawn from the evidence resolved in its favor if possible. The following two paragraphs from the letter of May 17, 1954, are sufficient for the purposes of the motion to suggest a contingent fee proposal and to incorporate the unsigned contract into the letter by reference: "We propose to start work immediately on phases 1, 2, 3, and 4 as contained in the enclosed design outline, *under identical terms of our contract,* providing that compensation for actual time of Smith, Mann, and Lyle in connection with preliminary design phases be paid at the rate of $4.50 per hour plus 50%.

"When present uncertainties in connection with pro-

posed work are removed and *if Consumers proceed with proposed construction,* the amounts paid to our organization for the services of Smith, Mann, and Lyle *would be considered as payments on account of the basic fee in our main contract.*" (Italics supplied.)

The first paragraph of the letter of June 4, 1954: "This letter will confirm discussions with you relative to the firm of Fay E. Smith and Associates proceeding with preliminary engineering work on the proposed power plant for the Consolidated Eastern System, *as more fully set out in your letters of May 17 and 24,*" is sufficient for purposes of the motion to constitute an acceptance of the proposal. (Italics supplied.)

Construing these paragraphs for summary judgment purposes, it is apparent to us that a genuine issue as to a material fact exists and that the motion for summary judgment should have been overruled.

The evidence offered on a motion for summary judgment is for the purpose of showing that no issue of fact exists, not to try issues on pleadings, depositions, and affidavits which constitute only a part of the evidence available on a trial on the merits. Rehn v. Bingaman, 157 Neb. 467, 59 N. W. 2d 614; Wolf v. Tastee Freez Corp., *ante* p. 430, 109 N. W. 2d 733.

Defendant urges estoppel as a defense to plaintiff's claim. We dispose of that defense in this case by suggesting that its very nature raises a material fact issue which could not be disposed of on the fragmentary record in this case.

For the reasons given above, the motion for summary judgment should not have been sustained. The judgment of the district court is reversed and the cause is remanded for further proceedings according to law.

REVERSED AND REMANDED.