GEORGE T. JANSSEN, APPELLANT, v. MICHAEL J. HAMBLET
ET AL., APPELLEES.
250 N. W. 2d 902

Filed February 23, 1977. No. 40701.

706

Kutak, Rock, Cohen, Campbell, Garfinkle & Woodward, for appellant.

Quigley, Dill & Quigley and Herrick, McNeill, McElroy & Peregrine, for appellees.

Heard before SPENCER, McCOWN, and CLINTON, JJ., and MORAN and KELLY, District Judges.

KELLY, District Judge.

This is an action for specific performance filed in the District Court for Cherry County, Nebraska.

The plaintiff saw a display ad in the Gordon Journal, in February or March of 1975, which ad was in the following tenor:

FOR SALE
The Edw. TICE Ranch
1,120 acres
Bids in before March 15th
For more information contact
Jean Tice 282-1671

As spelled out in the above advertisement, the ranch consisted of 1,120 acres of ground located in Cherry County, Nebraska. Plaintiff, in response to the advertisement, contacted Jean Tice, who was known to him. The ground was actually owned by the Edward Tice Trust No. 1. The defendants in this action are G. Patrick Tice, Jean Tice, Helen Hamblet, Mary Schweitzer, the Trustees and Beneficiaries of the Edward Tice Trust No. 1, and the Estate of Edward Tice, deceased.

One of the trustees of the Tice Trust was Michael J. Hamblet, who was the son of Helen Hamblet, and was a practicing attorney in Chicago, Illinois.

After the initial contact with Jean Tice by the plaintiff, the plaintiff consulted with his attorney in Gordon, Nebraska, Mr. Michael V. Smith, and Mr. Smith contacted Mr. Hamblet in Chicago.

The plaintiff discussed making a bid of $140 per acre with Jean Tice after Mr. Smith contacted Mr. Hamblet. Mr. Hamblet wanted to be assured that the plaintiff would have sufficient financing to consummate the purchase of the ranch. The plaintiff then contacted the Federal Land Bank in Valentine, Nebraska, and the First National Bank of Gordon. As a result of contacting these two financial institutions, he was given written assurance of sufficient money to purchase the ranch at the bid of $140 per acre.

On March 3, 1975, Mr. Smith contacted Mr. Hamblet by telephone. Mr. Smith relayed the plaintiff's bid of $140 per acre, and the attorneys discussed terms of the sale. It was also agreed that a copy of an offer to purchase, the form of which had been prepared by Mr. Hamblet for use in entertaining bids on the purchase of the ranch, would be forwarded to Mr. Smith. A copy of this offer to purchase was mailed to Mr. Smith on March 4, 1975.

The form of the offer to purchase made no mention of the sale of personalty on the ranch. Also included in the Tice Trust, the personalty was to pass to the benefit of Jean Tice. It was contemplated between the parties that a separate contract would be entered into for the sale of this personal property, but that the sales would be made at the same time.

After Mr. Smith received a copy of the draft of the offer to purchase form, he redrafted the same, inserting the name of the plaintiff, changed the terms insofar as the payment of the taxes on the real estate was concerned, extended the closing date from the 15th of April to the 15th of May 1975, and inserted an execution date of March 7, 1975. This version of the agreement was apparently signed by Mr. Janssen on March

7, 1975. The offer was never signed by any trustee or agent of the trust.

In a telephone conversation on March 8, 1975, the attorneys, Mr. Hamblet and Mr. Smith, discussed changes made by Mr. Smith in the offer executed on March 7, 1975, and apparently they agreed as to a change in form. Mr. Smith agreed, orally, for his client, to restore the original provisions relating to the closing date, and Mr. Hamblet agreed to reduce the reservation of oil and mineral rights, from 100 percent to 50 percent. There had been, apparently, a misunderstanding between the two attorneys as to the language which excepted the 1974 real estate taxes and, also, relating to the matter of personalty to be sold by Jean Tice. Mr. Smith retyped the first two pages of his revised offer to purchase so as to reflect the correct understanding. These two pages were then substituted in the March 7 offer made by the plaintiff. This was then placed in the file of Mr. Smith where it remained until March 15, 1975.

On March 8, 1975, the plaintiff and Jean Tice reached an agreement for a separate contract to sell certain personal property, located on the ranch, to the plaintiff. On the same date there was a further conversation between Mr. Smith and Mr. Hamblet regarding certain changes that were to be made in the original offer. As a result of this conversation, Mr. Mamblet drafted a new agreement reflecting the change in the sale of the mineral rights and, also, including the name of the plaintiff as purchaser. This agreement excluded specific reference to the 1974 real estate taxes, and excluded the mention of the separate personal property of Jean Tice. This agreement was circulated by Mr. Hamblet among the trustees and two nontrustee beneficiaries of the Tice Trust. This agreement was received by Jean Tice on March 14, 1975, and on the morning of March 15, 1975, was executed by Patrick Tice and Jean Tice. Jean Tice then notified Mr.

Janssen and they agreed to meet in Mr. Smith's office in Gordon, Nebraska.

Mr. Michael Smith was not present in the State of Nebraska on March 15, 1975, and the meeting in his office was attended by his associate, Mr. Dennis King. When Jean Tice arrived at the attorney's office, Mr. King notified her that Mr. Hamblet had called from Chicago, and he wanted Jean Tice to contact him before Mr. Janssen signed the contract, or before any further proceedings took place. Jean Tice then called Mr. Hamblet in Chicago, who notified her that the offer of Mr. Janssen, which was still unsigned by him, would not be accepted by the trustees for the reason that a substantially higher offer had been received for the sale of the land involved.

The plaintiff arrived at the attorney's office and was notified that his offer would not be accepted. The plaintiff and his attorney, Mr. King, attempted to give a $1,000 money order to Jean Tice, which she refused to accept. Jean Tice was also informed that the plaintiff had unilaterally placed the sum of $14,800 in an escrow account in the First National Bank of Gordon, Nebraska. This fact had not been previously communicated to either Jean Tice or her attorney, Mr. Hamblet, and no escrow agreement had been entered into by them.

At the March 15, 1975, meeting there was also further conversation between Jean Tice and the plaintiff and his attorney, Mr. King, relating to the items to be included in the contract for the sale of the personal property. When Jean Tice left the attorney's office she took with her both agreements, the contract for the sale of the personal property, and the offer to purchase offered by the plaintiff. Neither of these documents had been signed by the plaintiff, although the offer to purchase had been signed by the trustees and nontrustee beneficiaries of the Tice Trust.

This action for specific performance was subsequently commenced by the plaintiff. Depositions of all

the principal parties involved in this transaction were taken. Both plaintiff and defendants filed motions for summary judgment, and the matter was submitted to the District Court for Cherry County, Nebraska, on the pleadings, depositions, and written documents pertaining to it. On February 11, 1976, after due consideration of all the evidence and testimony offered, the District Court for Cherry County, Nebraska, overruled the plaintiff's motion for summary judgment and sustained the defendants' motion for summary judgment, ordered that the petition of the plaintiff be dismissed with prejudice, and taxed the costs of the action to the plaintiff. Plaintiff has appealed.

The first question that must be resolved is whether or not it was proper for the District Court to sustain a motion for summary judgment in this case. This court was faced with a similar question in the case of Randall v. Erdman, 194 Neb. 390, 231 N. W. 2d 689. That was an action wherein both parties had filed a motion for summary judgment and the motion was sustained by the trial court for one of the parties. Our court in considering the question stated as follows: "A motion for summary judgment can be granted only where there is 'no general issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law.' Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152. See, also, Friedrich v. Anderson, 191 Neb. 724, 217 N. W. 2d 831; Grantham v. General Tel. Co. of Midwest, 191 Neb. 21, 213 N. W. 2d 439. The party moving for a summary judgment has the burden of showing that no issue of fact exists, and the court should consider all the evidence in the light most favorable to the party opposing the motion. See, Fay Smith & Associates, Inc. v. Consumers Public Power Dist., 172 Neb. 681, 111 N. W. 2d 451 (1961); Youngs v. Wagner, 172 Neb. 735, 111 N. W. 2d 629 (1961); Green v. Village of Terrytown, supra."

The trial court held "that there is no real dispute as

to the facts in this case, and the only discrepancies that appear, from the depositions, is, perhaps, some minor disagreement on the order of sequence of events that occurred, particularly on that morning in the law office of Smith and King, but generally, the parties are in agreement as to what occurred." It was therefore proper for the trial court to entertain motions for summary judgment.

The next problem that must be dealt with is whether or not the court was correct in sustaining the defendants' motion for summary judgment.

The plaintiff relies on the case of Fairchild v. Fairchild, 176 Neb. 95, 125 N. W. 2d 191, which held that delivery was not necessary for acceptance of an offer to purchase. This statement is correct insofar as the Fairchild case is concerned because in that case, after the defendant had executed an agreement, the defendant had delivered the same to the plaintiff's attorney.

The trial court in this case stated: "* * * the Court finds that the instrument, which is marked Exhibit 3, is the instrument that these parties intended to satisfy the Statute of Frauds in this transaction, and that instrument only was intended to satisfy the Statute of Frauds; and the next point which must be determined is whether there was a meeting of the minds to install that instrument as the agreement of the parties. It having been prior to the meeting in Smith and King's office, been fully executed and sufficient to satisfy the Statute of Frauds, and the Court finds that there was no meeting of the minds. Jean Tice came with the instruments prepared to conclude the transaction, but she was representing the minds of her fellow trustees and the fellow owners of the property, and before any indication by her the deal was settled, she received word from one of the co-trustees that a better bid had been received, and she exercised her control over the instruments, preventing their delivery and refused to take any payments which might well have satisfied the ab-

sence of Mr. Janssen's signature on the instruments, and it is, of course, a fact that he did not execute the instruments identified by Exhibit 3, and I think that his reaction in regard to, I believe it is, Exhibit 4, the personal property contract, indicates that he accepted the fact that she had forestalled an agreement at that time, in that he said in, briefly, these words, there is no sense in me signing the personal property agreement when I don't have the land, and he acknowledged, at the time she took her instruments and went away, that he didn't have a contract. These contracts were not dependent one upon the other. They are divisible, but he didn't want that personal property unless he had the land, and when she left, that was the status of the situation, that there had not yet been a meeting of the minds, and it would have to occur later, and from the evidence, it did not occur later. She gave them the hopes that before midnight she might, but there never occurred a meeting of the minds on this contract, and therefore, the Defendants are entitled to a Summary Judgment ordering that the petition of the Plaintiff be dismissed, with prejudice * * *."

We find that the trial court was correct in determining that there was no dispute of material fact and in sustaining the defendants' motion for summary judgment. The judgment of the trial court is therefore affirmed.

AFFIRMED.