ROBERT L. HANSEN AND MARILYN S. HANSEN, HUSBAND AND WIFE, APPELLANTS, V. DONALD W. HILL AND GAIL HILL, HUSBAND AND WIFE, APPELLEES.

340 N.W.2d 8

Filed November 10, 1983.   No. 82-250.

Paul J. LaPuzza, for appellants.

John V. McNamara, for appellees.

BOSLAUGH, WHITE, and HASTINGS, JJ., and BROWER and McGINN, D. JJ.

BROWER, D.J.

This was originally an action in equity in which

the plaintiffs, Robert and Marilyn Hansen, sought specific performance of an alleged land contract as purchasers. Following a default by the defendants, a decree was entered requiring the defendants to perform the sale agreement and convey the real estate to the plaintiffs.

The defendants filed a motion to vacate this judgment on the ground that they had not been properly served. The decree was vacated and they were given leave to file an answer.

The plaintiffs filed a second amended petition, abandoning their prayer for specific performance and seeking damages for breach of contract. After the defendants' demurrer was overruled they filed a motion for summary judgment, with supporting affidavits. The motion was sustained and the petition was dismissed. Upon denial of their motion for new trial, plaintiffs appeal.

The plaintiffs assign as error the sustaining of the motion for summary judgment and the overruling of the motion for new trial, on the ground that there were material issues of fact which existed, and on the ground that the trial court erred in ruling that the contract between the parties did not satisfy the statute of frauds.

This court, on appeal, must review the allegations of the petition, the supporting documents, and the depositions in accordance with the well-established rule that in considering the motion for summary judgment the court must view the evidence in the light most favorable to the party against whom it is directed.

" 'A summary judgment is authorized only when the moving party is entitled to a judgment as a matter of law. If there is a genuine issue of fact to be determined, a summary judgment may not be properly entered.' " *Wolf v. Tastee Freez Corp.*, 172 Neb. 430, 437, 109 N.W.2d 733, 738 (1961). See, also, *Fay Smith & Associates, Inc. v. Consumers P.P. Dist.*, 172 Neb. 681, 111 N.W.2d 451 (1961).

Upon reviewing the second amended petition, the depositions, and the documents, we find that there are material issues of fact to be resolved and that the defendants were not entitled to judgment as a matter of law.

The defendants listed certain real estate located at 5016 California Street in Omaha, Nebraska, for sale with Real Estate Associates, Inc., and one of its agents, Mark Abboud. The plaintiffs sought to purchase this real estate and submitted a purchase agreement to the defendants' agent through their own real estate agent, Joseph Fabian.

This purchase offer set out a proposal wherein the plaintiffs agreed to pay $130,000 under certain terms to defendants, with possession on or before December 1, 1980, with the closing the same date. This purchase agreement was on a standard form and bears the date of October 10, 1980, with certain earnest money provisions and a place where an acceptance could be inserted on the reverse side by the seller defendants.

This offer to purchase was delivered by Fabian to the defendants' agent, Mark Abboud, who phoned the defendants to discuss the particulars of the proposal.

The defendants sought Abboud's advice as to the next move to make, and orally expressed a counterproposal. At Abboud's suggestion they sent a telegram to him. Although there were apparently two telegrams sent to Abboud, it appears that the telegram dated October 9, 1980, was never conveyed to the plaintiffs or their agent, Fabian. The only telegram of which the plaintiffs had knowledge was dated October 10, 1980, and read:

"PMS REAL ESTATE ASSOTIATES [sic]
  MARK ABOUD [sic], DLR
3540 SOUTH 84
OMAHA NE 68124
THIS IS TO CONFIRM MY ACCEPTANCE
OF OFFER OF $130,000 TOTAL PRICE ON

5016 CALIFORNIA STREET OMAHA NE-
BRASKA. $35,000 CASH DOWN PAYMENT.
20 YEAR AMORIZATION [sic]. 5 YEAR
BALLOON NOTE. INTEREST AT 13.59
PERCENT. DECEMBER 1 1980 MUST BE
NEGOTIABLE. WILL MOVE AS SOON AS
POSSIBLE
      DONALD W. HILL (5016 CALIFORNIA ST
OMAHA NE 68132)''

The plaintiffs' agent picked up a copy of this tele-
gram at Abboud's office and conveyed the informa-
tion to the plaintiffs. Although there is confusion as
to the exact date and time, the plaintiff Marilyn
Hansen went to Abboud's office and wrote the fol-
lowing on the reverse side of their original proposal:
"We accept telegram. Marilyn S. Hansen 10/10/80.''

The defendants would appear to have understood
the significance of the October 10 telegram, inas-
much as they attempted to withdraw their "accept-
ance" by sending a telegram to Abboud on or about
October 15, 1980, which read:

      "MARK ABOUD [sic] REAL ESTATE AS-
SOCIATES RPT DLY MGM, DLR
SOUTH 84 ST
OMAHA NE
YOUR VERBAL COMMUNICATION VIA
TELEPHONE THAT A PARTY WHO MADE
AN OFFER ON MY PROPERTY LO-
CATED AT 5016 CALIFORNIA STREET
WILL ONLY HONOR THEIR OFFER IF
THEY CAN HAVE POSSESSION BY DE-
CEMBER 1 1980 IS TOTALLY UNACCEPT-
ABLE TO ME AND IS A CLEAR VIOLA-
TION OF THE REQUIREMENTS OF MY
LAST TELEGRAM YOU ARE HEREBY
NOTIFIED THAT I AM NO LONGER IN-
TERESTED IN SELLING THE PROPERTY
THE AGREEMENT HAS NEVER BEEN
CONSUMMATED AND SHOULD THERE-
FORE BE CONSIDERED VOID I AM NO

LONGER INTERESTED IN ANY COUN-
TER OFFERS FROM THIS SOURCE
DONALD W HILL
5016 CALIFORNIA ST
OMAHA NE 68132''

Abboud conveyed this information to Fabian, and this suit followed upon defendants' failure to convey the property.

When construed in the light most favorable to the plaintiffs, the facts as set forth indicate that there was a genuine issue of fact as to whether the defendants had accepted the plaintiffs' offer to purchase, and whether the defendants' withdrawal of their offer to sell was timely made, considering the notation which had been made on the reverse side of the purchase agreement. "It is not the purpose of the rule, and it must not be so construed, to deprive a litigant of a formal trial where there is a genuine issue of fact to be determined." *Miller v. Aitken*, 160 Neb. 97, 101, 69 N.W.2d 290, 292 (1955); *Healy v. Metropolitan Utilities Dist.*, 158 Neb. 151, 62 N.W.2d 543 (1954).

Neb. Rev. Stat. § 25-1332 (Reissue 1979) provides two things the movant must show. First, that there is no genuine issue of fact in the case, and second, that he is entitled to a judgment as a matter of law.

We now come to the issue of whether or not the telegram dated October 10, 1980, was a writing which was sufficient to satisfy the statute of frauds.

Neb. Rev. Stat. § 36-105 (Reissue 1978) provides: "Contracts for lease or sale of lands; when void. Every contract for the leasing for a longer period than one year, or for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made."

To satisfy the Nebraska statute of frauds, the contract itself must be in writing or, in the event the contract is oral, there must be a written memoran-

dum of the contract, signed or authenticated by the vendor against whom it is to be enforced.

In *Ord v. Benson*, 163 Neb. 367, 370, 79 N.W.2d 713, 715 (1956), the court stated that a written memorandum will satisfy the statute of frauds. " 'A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (b) the land, goods or other subject-matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.' "

The purchase agreement delivered by the buyers to the sellers' agent was a memorandum sufficient to satisfy the statute of frauds, and the telegram signed by the seller and party to be charged was sufficient under the statute if it contained reference to the terms of the proposal. *Pitek v. McGuire*, 51 N.M. 364, 184 P.2d 647 (1947).

There is substantial authority that a telegram may constitute a sufficient memorandum under the statute of frauds. *Yaggy v. B.V.D. Co.*, 7 N.C. App. 590, 173 S.E.2d 496 (1970); 72 Am. Jur. 2d *Statute of Frauds* § 300 (1974); 37 C.J.S. *Frauds, Statute of* §§ 175, 176 (1943).

The defendants have relied upon *Brezina v. Hill*, 195 Neb. 481, 238 N.W.2d 903 (1976), and a line of cases dealing with agency relationships between a broker and a seller where, without separate power of attorney or written authority, the broker has signed the sale contract for the owner and attempted to bind the seller. In the case before us no such type of agency is involved. The use by the sellers of a telegram to inform the purchasers of their accept-

ance was merely a means of conveyance of ideas or decision on the part of the principals. The agency created was for no other purpose.

We come now to the question of whether there was a valid subscription. The telegram to which the seller defendant's name has been affixed may be considered as having been signed by the defendant Donald W. Hill within the meaning of the statute of frauds. "The signing of a paper-writing or instrument is the affixing of one's name thereto, with the purpose or intent to identify the paper or instrument, or to give it effect as one's act." *McCall v. Institute*, 189 N.C. 775, 782, 128 S.E. 349, 353 (1925).

This is usually accomplished when a person affixes his name in his own handwriting; in such case the very fact clearly evidences the intent of the signer. Affixing one's handwritten signature, however, is not the only method by which a paper writing may be considered as being signed within the meaning of the statute of frauds. As long ago as Lord Ellenborough's opinion in *Schneider and Another against Norris*, 2 M. & S. 286, 105 Eng. Rep. 388 (1814), it has been recognized that a printed name may constitute a sufficient signing under the statute of frauds, provided that it is recognized by the party sought to be charged. The courts of this country have generally recognized that principle. *Bishop v. Norell*, 88 Ariz. 148, 353 P.2d 1022 (1960); *City of Gary v. Russell*, 123 Ind. App. 609, 112 N.E.2d 872 (1953); *Cummings v. Landes*, 140 Iowa 80, 117 N.W. 22 (1908); *Radke v. Brenon*, 271 Minn. 35, 134 N.W.2d 887 (1965).

The above view has been adopted in the Restatement of Contracts § 210 (1932), which provides that the signature to a memorandum under the statute may be in writing or printed and need not be subscribed at the foot of the memorandum, but must be made or adopted with the declared or apparent intent of authenticating the memorandum as that of the signer.

In *Heffernan v. Keith*, 127 So. 2d 903 (Fla. App. 1961), the court, in answering the defendant's contention that the telegram was not sufficient under the statute because it was not a signed copy, indicated that the defendant's admissions of having sent the telegram amounted to acquiescence.

In the late case of *Hillstrom v. Gosnay*, ___ Mont. ___, 614 P.2d 466 (1980), the court, on facts nearly identical to those confronting the court in this particular case, ruled that a telegram may constitute sufficient written memorandum to satisfy the requirements of the statute of frauds, and also ruled that a typewritten signature on a telegram is proper subscription within the meaning of the statute of frauds, provided that the necessary intent to authenticate is shown.

In view of the fact that there does appear to be a genuine issue of a material fact, the trial court should not have granted summary judgment. For that reason the judgment of the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.