O'NEILL PRODUCTION CREDIT ASSOCIATION, APPELLEE, V. MURRAY D. MELLOR ET AL., APPELLANTS.

371 N.W.2d 265

Filed August 2, 1985.   No. 83-604.

Richard A. Koehler, for appellants.

John C. Schraufnagel of Cronin, Symonds & Schraufnagel, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

O'Neill Production Credit Association obtained a summary judgment determining that Murray D. Mellor and his wife, Jean M. Mellor, owed O'Neill $603,995.52 on a secured loan and foreclosing upon the Mellors' interests in and to certain real and personal property. The Mellors' sole assignment of error on appeal is that genuine issues exist as to material facts. We affirm.

The Mellors agree that the loan documents are valid, that the debt is in default, and that the amount determined by the trial court to be owed is correct. Their brief on appeal appears to argue, however, that the evidence presents genuine issues of material facts as to their defenses that O'Neill is estopped by its conduct from asserting any claim against them and has failed to forbear from asserting any claims against them as required by O'Neill's own policy.

The record establishes that the Mellors are farmers and ranchers who began borrowing money from O'Neill in approximately 1961. In determining the amount the Mellors should borrow, they and O'Neill worked together in estimating income, expenses, and market trends. The usual procedure was for Mr. Mellor to make proposals to O'Neill, which would either accept or reject the plans and either lend money or not. At times O'Neill made recommendations as to the course of action the Mellors should take and sometimes refused to loan any money for certain expenditures which O'Neill considered unwise.

The Mellors' operation began to experience financial difficulties in the early 1970s, and by 1977 the Mellors' equity stood at a negative 20 percent.

As early as 1973, O'Neill requested that the Mellors get into a better equity position by selling a quarter section of their land. The Mellors, however, did not want to sell that particular farm in pieces and instead sold four quarter sections, retaining only

one quarter section. Following these sales, the Mellors assigned their rights as sellers under the land sales contracts to O'Neill and executed mortgages covering real estate and a security agreement granting O'Neill a security interest in the Mellors' cattle, farming equipment, and growing crops.

In claiming that O'Neill is estopped by its own conduct from asserting any claims against them, the Mellors argue that O'Neill held itself out as an expert in money matters as related to farming and ranching operations, that the Mellors relied on the advice O'Neill gave them, and that the advice was faulty.

Specifically, the Mellors claim that in 1970 O'Neill required them to sell 500 head of cattle because the market was projected to continue its downward movement. However, the market went up. The Mellors claim they lost $48,000 by selling the cattle early.

The Mellors further claim that if they had held the land they sold, as discussed previously, for another 3 years, they would have received an additional $432,000. In addition, sale of the land meant they had to rent pastureland, which would otherwise have been unnecessary.

In 1978 the Mellors received approval to purchase 200 steers, but O'Neill apparently revoked that approval before the steers were purchased. The Mellors claim that cattle made a good profit that year, and if the approval had not been revoked, it "would have put things in a lot better shape."

In 1979 the Mellors bought yearlings, but O'Neill required that the contracts be hedged. The market moved against the hedge, and instead of making a profit of $24,000, as would have been the case without hedging, a profit of only $12,000 was made.

In 1981, as a condition of renewing the Mellors' loans, O'Neill required that they sell their cattle. Such was done in February 1982. The market price for cattle then rose, and the Mellors again claim a substantial amount of money was lost.

In 1982 O'Neill would not allow the Mellors to sell some corn under a government program, causing another financial loss.

The Mellors calculated their total loss due from the above actions of O'Neill to be $674,849.

The Mellors also claim they were "tricked" into giving the

March 1982 mortgage. Although Mr. Mellor cannot remember what any O'Neill employee said, he claims that the language of the mortgage led him to believe that he was to receive $200,000 for operating money. However, O'Neill refused to advance any money for operating expenses after April 1982. This suit was instituted on December 1, 1982. The mortgage states it is given to secure a collateral note in the principal sum of $200,000 and any future advances "which may be made from time to time by Mortgagee, at its option, to Mortgagor(s)" for any sum not to exceed $200,000.

Even though the Mellors were dissatisfied with O'Neill, they did not attempt to obtain other financing until 1982, and even then "made very little effort" to do so. It was Mr. Mellor's opinion that from 1970 on he would not have been able to obtain financing through any other institution because his financial position was so poor.

In order for the Mellors to succeed in their first defense, equitable estoppel, they must establish the coexistence of two separate sets of elements. They must first prove that O'Neill, the party to be estopped, (1) engaged in conduct which amounts to a false representation or concealment of material facts, or, at least, which was calculated to convey the impression that the facts were otherwise than, and inconsistent with, those which O'Neill now attempts to assert; (2) had the intention, or at least the expectation, that such conduct would be acted upon by, or influence, the Mellors; and (3) had knowledge, actual or constructive, of the real facts. The evidence must also show that, at the same time, the Mellors (1) had a lack of knowledge and of the means of acquiring knowledge of the truth of the facts in question; (2) relied, in good faith, upon the conduct or statements of O'Neill; and (3) acted or refrained from acting because of O'Neill's conduct such as to change their position or status to their injury, detriment, or prejudice. *R.A.S., Inc. v. Crowley*, 217 Neb. 811, 351 N.W.2d 414 (1984); *Pester v. American Family Mut. Ins. Co.*, 186 Neb. 793, 186 N.W.2d 711 (1971); *Cillessen Constr. v. Scotts Bluff Co. Hous. Auth.*, 217 Neb. 39, 348 N.W.2d 418 (1984).

The record raises no questions of fact, either directly or by inference, that O'Neill made any false representations or

concealed any material facts in a manner calculated to convey the impression that the facts were otherwise than, and inconsistent with, those O'Neill now attempts to assert. The fact that matters did not develop as one or all of the parties might have expected or hoped does not prove that O'Neill misrepresented anything.

Unlike the situation in *Yankton Prod. Credit Assn. v. Larsen*, 219 Neb. 610, 365 N.W.2d 430 (1985), where a fact question existed as to what Yankton Production Credit Association promised with respect to financing the debtor's expansion, there is no evidence in the present case that O'Neill promised future advances would be made as part of the consideration for execution of the 1982 mortgage. The evidence is only that Mr. Mellor concluded, erroneously, from the mortgage language itself that operating funds would be made available.

Once it is determined, as we do, that the evidence discloses no misleading statements by O'Neill, no further inquiry as to the defense of estoppel need be made, for it cannot exist.

The Mellors next contend, citing 12 C.F.R. § 614.4510 (1985), that O'Neill is required to have adopted a policy which provides for forbearance on claims against borrowers who are cooperative, make an honest effort to meet the loan conditions, and are capable of working out of the debt. They argue that O'Neill has violated such a policy in this case.

The difficulty with that argument, from the Mellors' point of view, is that they do not allege either that O'Neill adopted such a policy and violated it or that O'Neill failed to adopt such a policy and thereby violated the guidelines of § 614.4510. Indeed, on the record before us it would appear that O'Neill forbore for about a decade. In any event, whether compliance with a policy in conformance with § 614.4510 is to be considered a condition precedent to foreclosure to be proved by O'Neill or an affirmative defense against foreclosure to be proved by the Mellors, a matter we do not decide, there can be no factual issues in the absence of appropriate allegations.

A summary judgment is properly granted where the record presents no genuine issue either as to any material fact or as to the ultimate inferences to be drawn therefrom, and the moving

party is entitled to judgment as a matter of law. *Moore v. American Charter Fed. Sav. & Loan Assn.*, 219 Neb. 793, 366 N.W.2d 436 (1985); *Timmerman v. American Trencher, Inc., ante* p. 175, 368 N.W.2d 502 (1985); *Yankton Prod. Credit Assn. v. Larsen, supra*; *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985). This is such a case.

The judgment of the trial court, being correct, is affirmed.

AFFIRMED.