JON S. MCKENZIE ET AL., APPELLANTS, V.
CITY OF OMAHA, A MUNICIPAL
CORPORATION, APPELLEE.
668 N.W.2d 264

Filed September 2, 2003.   No. A-02-054.

Mary C. Gryva, of Frank & Gryva, P.C., and Terrence J. Salerno for appellants.

Wendy E. Hahn, Deputy Omaha City Attorney, and Michelle Peters for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

The appellants (Firefighters) in this case are a group of 98 Omaha firefighters who contend that the January 1, 1998, merger of the Millard Suburban Fire Protection District (Millard) with the Omaha Fire Department (Omaha) triggered Omaha Mun. Code, ch. 23, art. III, § 23-148 (1980), so as to entitle them to a pay increase. Thus, in this action, the Firefighters are suing for equitable relief to collect the backpay they claim to be owed. This interlocutory matter is before this court because the City of Omaha (City) filed a motion to disqualify attorney John Fahey as the Firefighters' counsel, which motion was sustained by the district court for Douglas County, Nebraska. The Firefighters appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2001, the Firefighters filed a petition against the City in the district court for Douglas County, alleging that on January 1, 1998, Omaha and Millard merged into the Omaha Fire Department. As a result of the merger, 38 personnel from Millard became employees of the Omaha Fire Department. The petition asserts that there is a collective bargaining agreement between the City and the Professional Firefighters Association of Omaha, Local No. 385 (Union), which agreement classifies firefighters in pay steps or levels. At the time of the merger, a number of former Millard firefighters were placed in the Omaha system and classified as firefighters at the top step. The Firefighters, however, who possessed more seniority than the former Millard employees, remained at firefighter pay steps lower than that top step, which allegedly brings into play Omaha Municipal Code § 23-148, which provides:

> When a uniformed member of the fire or police department is paid at a rate which exceeds that at which such member's senior in rank, grade or class is being paid, such senior officer or officers shall be increased to the next higher step within the assigned pay range irrespective of the date of last increase. The effective date of such increase shall become the anniversary date for pay purposes each year thereafter until promoted or demoted. This provision shall not apply when a member has been reduced in pay, grade or

class for disciplinary reasons or when he has not been granted a pay increase due to unsatisfactory performance; neither shall it apply when such condition is the result of use of the two-step salary increase provision.

The Firefighters allege that the City failed to comply with the dictates of the aforementioned code and that as a result, they are entitled to back pay from raises required by the code. The petition prays that an accounting be made of all wages due the Firefighters by virtue of the City's failure to comply with Omaha Municipal Code § 23-148, that the Firefighters be placed at the appropriate pay range or step relative to the former Millard employees, and that the Firefighters recover their attorney fees and costs.

Within 8 days of the filing of the lawsuit, the City filed a motion to disqualify attorney Fahey and other attorneys from his law office. The City's motion alleges that on December 9 and 16, 1997, Fahey "testified" at a public hearing before the Omaha City Council concerning the agreement which effectuated the Millard and Omaha merger (Omaha-Millard Merger Agreement) and that "this testimony is relevant and necessary" in the instant lawsuit. The City alleges that Fahey's testimony is not cumulative, not otherwise available, and relates to a contested issue. The City therefore concludes that the ethical requirements of the Code of Professional Responsibility require Fahey's disqualification and withdrawal as counsel for the Firefighters.

On August 10, 1998, 4 days before the motion was heard before the district court, the City filed its answer to the underlying lawsuit. The portion thereof which is relevant here is the allegation that "[the Firefighters'] claims are barred under the theory of equitable estoppel." It is noteworthy that this defense stands naked in the answer as a mere conclusion without any supporting factual allegations.

## EVIDENTIARY HEARING

On August 14, 2001, a brief hearing was held before a judge of the district court for Douglas County. The City offered transcripts of the proceedings of the December 9 and 16, 1997, Omaha City Council meetings. Counsel for the Firefighters offered the Omaha-Millard Merger Agreement as well as the then-effective collective bargaining agreement between the

City and the Union. Fahey pointed out that the petition had a certified copy of Omaha Municipal Code § 23-148 attached and said, "if it [the code] needs to be part of the evidence we would put 23148 into the record and ask the Court to take Judicial Notice of it." The trial judge said that "rather than making this pleading that's already in the file a separate exhibit, I'll just take Judicial Notice of it." Arguments of counsel were not recorded, and the district court rendered its decision on December 20, 2001. We quote the district court's decision and rationale as follows:

> [The City] has raised equitable estoppel as one of its affirmative defenses in the case herein. [The City] also asserts that . . . Fahey will be called as a key witness in supporting that argument. [The Firefighters] deny any necessity for . . . Fahey's testimony and further assert that any information to be gained from . . . Fahey's testimony may be obtained in other ways.
>
> The [c]ourt will take [the City] and its attorneys, who are officers of the [c]ourt, at their word that . . . Fahey will be called as a material and necessary witness in their case in chief. Accepting that as fact, and giving due consideration to the Nebraska Code of Professional Responsibility Disciplinary Rule 5-10 (B), Ethical Consideration 5-9, as well as applicable case law, it becomes clear that [the City's] Motion to Disqualify should be sustained.

The Firefighters have timely appealed to this court.

## ASSIGNMENTS OF ERROR

The Firefighters assert, summarized and restated, that the district court erred in (1) entering the order of disqualification and (2) relying on the City's attorney's assertion that Fahey was a material witness.

## STANDARD OF REVIEW

■ In an appeal from an order disqualifying counsel, an appellate court reviews the trial court's factual findings for clear error and ultimately makes its disqualification decision independent of the trial court's ruling. *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997).

## ANALYSIS

██ At the outset, we point out that while an order of disqualification of counsel or the denial of the same is clearly interlocutory, *Richardson, supra,* provides for appellate jurisdiction if an appeal after judgment would not protect the clients' interests. In this case, an interlocutory appeal is appropriate, since it was needed to protect the Firefighters' interest in representation by their choice of counsel—a lawyer familiar with the City and the Union. The basic consideration applicable here is found in Canon 5, DR 5-102(B), of the Code of Professional Responsibility, which provides:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness other than on behalf of his or her client, the lawyer may continue the representation until it is apparent that his or her testimony is or may be prejudicial to the client.

██ In *Mutual Group U.S. v. Higgins,* 259 Neb. 616, 611 N.W.2d 404 (2000), the Nebraska Supreme Court, citing Canon 5, EC 5-9, of the Code of Professional Responsibility, recognized that the roles of witness and advocate are inconsistent, given that the fundamental purpose of the advocate is to advance or argue the case of another, while the function of a witness is to state facts objectively; an advocate who becomes a witness is in the unseemly and ineffective position of arguing his or her own credibility. In *Higgins, supra,* a health insurer had paid medical bills for its insured and brought suit asserting subrogation rights against the insured who had settled his claim against a tort-feasor. The insurer moved to disqualify its insured's counsel on the ground that· he would likely be called as a witness regarding communications allegedly made by the insurer giving notice of its subrogation interest prior to the settlement of the action against the tort-feasor. The insurer claimed that it gave notice of its subrogation rights to its insured's attorney. The county court had sustained the motion to disqualify upon a finding that the attorney would be a material witness. The district court upheld the disqualification, finding the attorney's testimony to be necessary, and the Supreme Court in turn said: "It seems clear that the testimony of [the insured's] counsel will be

necessary in the case against [the insured.]" *Id.* at 621, 611 N.W.2d at 409. Under DR 5-102, the insured's counsel was disqualified. If the insured had settled the case without provision for the insurer's subrogation interest, despite notice to the insured's attorney, such fact would obviously be adverse to the insured. In summary, according to *Higgins, supra,* it is apparent that one of the keys to attorney disqualification analysis is the necessity of the attorney's testimony.

We note that the Supreme Court has considered where the burden of proof lies in a motion to disqualify counsel in a criminal case. In *State v. Ehlers,* 262 Neb. 247, 631 N.W.2d 471 (2001), the Supreme Court noted that while a trial court has an independent duty to explore any conflicts of interest that may arise regardless of who raises the matter, the Sixth Amendment right to counsel reflects a constitutional protection of the defendant's free choice and there is the presumption in favor of the defendant's choice of counsel. The *Ehlers* court found that the logical conclusion from these premises was that the burden of proof is on the government when disqualification of counsel is sought. Although we have not found a civil case directly addressing the burden of proof, we observe by analogy that the burden of proof to disqualify a judge rests on the party seeking to do so. See *State v. Barker,* 227 Neb. 842, 420 N.W.2d 695 (1988).

■ The matter of the burden of proof is important in the present case because the Firefighters assail the district court's rationale that it would "take" the City and its attorney "at their word that . . . Fahey will be called as a material and necessary witness in their case in chief." While we agree with the premise that materiality and necessity are keys to the analysis, disqualification cannot be ordered simply upon opposing counsel's representation that the lawyer they seek to disqualify is a material and necessary witness. It is the trial court's duty to make the disqualification decision based on the nature of the case, the applicable law, and the evidence offered in support of the motion. This is not to say that the assertions of counsel, i.e., in an answer raising an affirmative defense, may not "set the stage" for a decision, but the key is still the evidence showing that the lawyer is a material and necessary witness. Accordingly, disqualification solely on the word of opposing counsel is a flawed

rationale. Nonetheless, as the standard of review requires, we make an independent decision on disqualification.

*City's Grounds for Disqualification of Fahey.*

Initially, it is difficult to define the City's position in this matter, given the lack of specific factual allegations about the acts of the Firefighters or their counsel, Fahey, which give rise to an alleged equitable estoppel. Thus, we have no choice but to rely on the City's brief to this court. The brief asserts that (1) Fahey represented the Union, (2) the Union was not party to the Omaha-Millard Merger Agreement, and (3) the Union was nonetheless consulted during the merger negotiations. After these preliminary facts, the City's brief asserts that Fahey, "in his capacity as legal adviser to the Union, made certain representations to the City Council indicating the Union's acceptance of that Agreement with no mention of the [Omaha Municipal Code] which forms the basis of this lawsuit." Brief for appellee at 6-7. What duty Fahey would have to mention the code is not specified.

*Evidence Supporting Disqualification.*

The evidence shows that on December 9, 1997, the Omaha City Council had as an agenda item the Omaha-Millard Merger Agreement, an agreement whereby fire protection and emergency medical services for the Millard service area would be consolidated into the Omaha Fire Department's service area and certain Millard firefighters would be absorbed into the Omaha Fire Department. After a council member said that he had been told that this agreement violated part of the firefighters' contract, Fahey addressed the council, openly and clearly indicating that he represented the Union. Fahey was asked whether the agreement as proposed "violate[d] any articles of the current contract." In Fahey's response, he referenced an appendix to the agreement, which appendix dealt with several conditions of employment applicable to those merging employees. Fahey said,

> [W]e see the only problem to be Article 35 which talks about the transfer of these new employees and when they will be allowed to transfer and where they would be allowed. And that, once that's taken care of, and that is a small item, then this will be all right.

Then, in what is most appropriately classified as "argument," Fahey "reminded" the council that when there is a collective bargaining agreement in effect, it is a contract, and that the City cannot pass an ordinance which would void its agreement to a portion of the collective bargaining agreement. The reference to "Article 35" in Fahey's remarks refers to an article in the collective bargaining agreement concerning how vacancies in the fire department would be handled via bid, transfers, and assignments—the details of which are not relevant here. This was the extent of Fahey's comments at the council meeting on December 9.

At the Omaha City Council meeting on December 16, 1997, the following exchange between Fahey and Councilman Koneck took place:

Koneck: . . . Fahey, there is a request on this amendment to delete the sentence that reads as follows: In the event of any conflict between the provisions of this agreement and prior labor agreement with [the Union], then the provisions of such prior local agreement shall prevail. Without that sentence, how does it affect this agreement, or will there be any effect[?]

Fahey: . . . Fahey . . . representing [the Union]. Without that sentence, how does, I'm having trouble following you, Councilman.

Koneck: How is the agreement affected[?]

Fahey: The Collective Bargaining Agreement between . . .

Koneck: No. This agreement between Omaha and Millard. Or is it true that the labor agreement with [the Union] and the City . . . supersedes anything in this[?]

Fahey: My opinion would be the same as counsel for the City, is that you have a Collective Bargaining Agreement between the City . . . and [the Union]. And that agreement would supersede any ordinance that would come down along these lines and supersede any agreement that you would have with reference to the City of Millard. So if there is, in fact, I think the question is, is this absolutely necessary, or does anybody, is anybody's position different, the answer is no. Nobody's position is different.

Koneck: Thank you very much. That's all, Mr. President.

It appears that the sentence referenced in Koneck's question was not in the final version of the Omaha-Millard Merger Agreement which the Omaha City Council adopted. Additionally, earlier in the proceedings on December 16, 1997, the Omaha City Attorney had said that the sentence was not necessary, since the collective bargaining agreement would take precedence, and a motion to amend to remove the sentence was made.

The most straightforward method of analysis is to analyze the City's defense of equitable estoppel, the essence of which is the failure of Fahey, who represented the Union, to advise the city council of the consequences of Omaha Municipal Code § 23-148 if the city council approved the Omaha-Millard Merger Agreement. Equitable estoppel requires the coexistence of two separate sets of elements. As to the party estopped, herein the Firefighters, there must be (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which that party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct would be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the party who seeks to invoke the benefit of estoppel, herein the City, there must be (1) lack of knowledge and of the means of acquiring knowledge of the truth of the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel to his or her injury, detriment, or prejudice. See *O'Neill Prod. Credit Assn. v. Mellor*, 220 Neb. 555, 371 N.W.2d 265 (1985).

We need not analyze each of these elements which the City would have to prove to prevail on such defense, because consideration of one element shows the fallaciousness of equitable estoppel based on Fahey's remarks to the city council. Omaha Municipal Code § 23-148, when put together with the Omaha-Millard Merger Agreement, simply has the potential of affecting the pay rate of some existing Omaha firefighters, depending upon where the Millard firefighters being absorbed into the Omaha Fire Department are placed on the pay and seniority scale. Fahey

declared his appearance for, and thus representation of, the Union before the city council, thus leaving no illusions about where his allegiance would lie. The question put to Fahey was whether the merger violated the collective bargaining agreement, a question to which Fahey responded in the negative, other than noting the small problem of the transfers in article 35 of the collective bargaining agreement. There is no showing that Fahey's answer was not truthful.

Omaha Municipal Code § 23-148, while potentially impacting pay rates for some Omaha firefighters after the merger, does not prohibit the merger, nor does the merger violate the ordinance. The code might, depending on a number of facts, simply have an effect on some firefighters' pay—a matter to be decided in the underlying lawsuit. But Fahey was not asked about whether his clients' pay would be or might be affected. Equally compelling in our analytical framework is the fact that Fahey was not appearing before the city council as its legal advisor but as the representative and advocate of the Union, as he clearly declared before the council. The City has its own counsel who spoke to the councilman's question, is defending the underlying lawsuit here, and has pursued this motion to disqualify. One of the key elements of equitable estoppel as to the City is the lack of knowledge and lack of the means of obtaining knowledge as to the facts in question. The fact in question is the effect of the ordinance. Obviously, the City, through its legal department, including the attorney appearing before the Omaha City Council at the two December 1997 meetings, had the ability to look up the ordinance to check what it would mean if the Omaha-Millard Merger Agreement took place, or to advise the City that adjustments to the Omaha-Millard Merger Agreement would be required in light of the ordinance or that Millard firefighters should not be placed in certain pay brackets. Whether the City's counsel knew of the ordinance before the Firefighters' lawsuit is not revealed by this record. But it goes without saying that the existence of the code was "knowable" by the City, and its impact on pay was a matter for the City's own lawyers, who obviously had the means of gaining knowledge of Omaha Municipal Code § 23-148. After all, it was the City's code, not something that only Fahey knew or could have known about.

Accordingly, on the record made in support of the motion to disqualify, we hold as a matter of law that Fahey's remarks before the city council fail to prove an equitable estoppel, as alleged in the City's brief to this court, because the Omaha City Council, through its legal representatives, obviously had the means to become acquainted with the ordinance and its potential impact on the Omaha-Millard Merger Agreement. All the Omaha City Attorney had to do was read the ordinance and advise the city council about its effect on the firefighters' pay. Such is true even if Fahey was aware of the ordinance and planning the lawsuit, even as he spoke to the city council.

Consequently, Fahey is not a material and necessary witness for the City. We therefore reverse and vacate the order of disqualification and remand the matter to the district court for further proceedings.

REVERSED AND VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.